**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                           :
                                 :
    BRUCE J. CRISCUOLO        :      CHAPTER 11
                                 :
        Debtor           :      BKRTCY. NO. 14-16946 REF


**MEMORANDUM OF LAW RE: CONFIRMATION OF PLAN OF REORGANIZATION**
**PROPOSED BY THE DEBTOR BRUCE CRISCUOLO**

**I.   INTRODUCTION**

**A.   SECTION 1129 "LAUNDRY LIST" OF CONFIRMATION REQUIREMENTS**

The elements of Section 1129 are as follows:

11 U.S.C. § 1129 - Confirmation of Plan

(a)  The court shall confirm a plan only if all of the following requirements are met:
   (1)  The plan complies with the applicable provisions of this title.
   (2)  The proponent of the plan complies with the applicable provisions of this title.
   (3)  The plan has been proposed in good faith and not by any means forbidden by law.
   (4)  Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

   (5)  (A)  (I)  The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and
          (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

    (B)        The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6)  N/A      Governmental Regulatory Commission

(7)  With respect to each impaired class of claims or interests -

    (A)  each holder of a claim or interest of such class -
        (I)  has accepted the plan; or
        (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

    (B)  N/A  1111(b)(2)

(8)  With respect to each class of claims or interests -

    (A)  such class has accepted the plan; or

    (B)  such class is not impaired under the plan.

(9)  N/A  Tax

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) N/A   Retiree Benefits

(14) N/A   Domestic Support Obligations

(15) In a case in which the debtor is an individual and in
which the holder of an allowed unsecured claim objects
to the confirmation of the plan -

    (A)   the value, as of the effective date of the plan,
of the property to be distributed under the plan
on account of such claim is not less than the
amount of such claim; or

    (B)   the value of the property to be distributed under
the plan is not less than the projected disposable
income of the debtor (as defined in Section
1325(b)(2) to be received during the 5-year period
beginning on the date that the first payment is
due under the plan, or during the period for which
the plan provides payments, whichever is longer.

(16) All transfers of property under the plan shall be made
in accordance with any applicable provisions of non-
bankruptcy law that govern the transfer of property by
a corporation or trust that is not a moneyed, business,
or commercial corporation or trust.

(b) (1) Notwithstanding section 510(a) of this title, if all of
the applicable requirements of subsection (a) of this
section other than paragraph (8) are met with respect
to the plan, the court, on request of the proponent of
the plan, shall confirm the plan notwithstanding the
requirements of such paragraph if the plan does not
discriminate unfairly, and is fair and equitable, with
respect to each class of claims or interests that is
impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that
a plan be fair and equitable with respect to a class
includes the following requirements:

    (A)   With respect to a class of secured claims, the
plan provides -

        (I)   (I) that the holders of such claims retain
the liens securing such claims, whether the
property subject to such liens is retained by
the debtor or transferred to another entity,
to the extent of the allowed amount of such

3

claims; and

(II) that each holder of a claim of such
class receive on account of such claim
deferred cash payments totaling at least the
allowed amount of such claim, of a value, as
of the effective date of the plan, of at
least the value of such holder's interest in
the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of
this title, of any property that is subject
to the liens securing such claims, free and
clear of such liens, with such liens to
attach to the proceeds of such sale, and the
treatment of such liens on proceeds under
clause (I) or (iii) of this subparagraph; or

(iii)     for the realization by such holders of
this indubitable equivalent of such
claims.

(B)  With respect to a class of unsecured claims -

(I)  the plan provides that each holder of a claim
of such class receive or retain on account of
such claim property of a value, as of the
effective date of the plan, equal to the
allowed amount of such claim; or

(ii) the holder of any claim or interest that is
junior to the claims of such class with not
receive or retain under the plan on account
of such junior claim or interest any
property, except that in a case in which the
debtor is an individual, the debtor may
retain property included in the estate under
section 1115, subject to the requirements of
subsection (a)(14) of this section.

(C)  With respect to a class of interests -

(I)  the plan provides that each holder of an
interest of such class receive or retain on
account of such interest property of a value,
as of the effective date of the plan, equal
to the greatest of the allowed amount of any
fixed liquidation preference to which such
holder is entitled, any fixed redemption
price to which such holder is entitled, or

4

the value of such interest; or

    (ii) the holder of any interest that is junior to
the interests of such class will not receive
or retain under the plan on account of such
junior interest any property.

(c)    Notwithstanding subsections (a) and (b) of this section and
except as provided in section 1127(b) of this title, the
court may confirm only one plan, unless the order of
confirmation in the case has been revoked under section 1144
of this title.  If the requirements of subsections (a) and
(b) of this section are met with respect to more than one
plan, the court shall consider the preferences of creditors
and equity security holders in determining which plan to
confirm.

(d)    N/A  Securities Act of 1933

(e)    In a small business case, the court shall confirm a plan
that complies with the applicable provisions of this title
and that is filed in accordance with section 1121(e) not
later than 45 days after the plan is filed unless the time
for confirmation is extended in accordance with section
1121(e)(3).

**B.**    <u>**BACKGROUND/PROCEDURAL HISTORY**</u>

Many of the individual sections of Section 1129 will not be
discussed in this Memorandum because they are simply not
applicable to this case.  This is not a complicated case.  Debtor
suffered some pre-petition setbacks in his then consulting
business and was out of work for about one and a half years.
Unable to pay the mortgage, the family home was threatened with
foreclosure.  That foreclosure was what prompted the filing of
the case.  Debtor and his wife also have some fairly substantial
tax liabilities.  The Debtor sought Bankruptcy Court protection
to try to keep his residence from foreclosure and to deal with
the tax issues.  The case was originally filed as a Chapter 13

but converted to Chapter 11 on Debtor's motion in late September, 2016.

Debtor sought and received Court approval to prepay a portion of the IRS debt.  The remainder of the IRS debt, with the agreement of IRS, will be paid over 60 months beginning in January 2017 per Court Order entered on December 15, 2016.

On the contrary, Debtor's main antagonist, Wells Fargo, has been generally uncooperative both pre- and post-petition.  Prior to the filing, Debtor attempted over 18 months to modify his mortgage.  After he filed the case, he hired a former banker (David Swercizski) to try to modify his mortgage.  Fourteen or so months after the filing, and multiple failed attempts later, no modification has been proposed, despite Mr. Swercizski's opinion that the Debtor and his wife should have qualified under the applicable guidelines on several different submissions.

The conversion of this case to Chapter 11 and the proposed treatment of Wells' arrearage claim is the Debtor's answer to deal with this claim and move this case forward.  The evidence of Debtor's intent is also demonstrated by the (very) prompt filing of the Disclosure Statement and Plan in this case.

Debtor's good faith and intent are also demonstrated by his straight forward dealing with the IRS and his pending tax issues. There are no other significant creditors.

C.   **DISCUSSION**

Proceeding through the confirmation requirements:

**1129(a)(1): "The Plan complies with the applicable provisions of this title":**

While this section is fairly generic, there is no suggestion that this section is implicated in any negative way, or that the Plan does not comply with the Code.

**1129(a)2): "The proponent of the plan has complied with the provision of this title":**

Again, while a bit generic, this section simply means that the Debtor has basically performed his duties under the Code and has not violated any other sections of the Bankruptcy Code.  The Debtor has complied with all requirements of the Code and Rules in performing his duties in this case, has moved forward (very quickly) in proposing a Plan.  The Disclosure Statement has been approved.  The Debtor has filed  Monthly Operating Reports, has provided all information requested by the United States Trustee, has been examined by the United States Trustee, and has paid all fees associated with the case.

**1129(a)(3): "The Plan has been proposed in good faith and not by any means forbidden by law".**

There have been no objections lodged raising Debtor's good faith.  However, whether objections have, or have not, been filed, it is true that the Court must still satisfy itself that the Plan has, in fact, been "proposed" in good faith, and so a

brief examination of what the courts have determined that inquiry to encompass is in order.

As a basic statement of the law, it has been stated that the starting point is whether a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000).* The "totality of the circumstances must be considered by a court when determining whether a case has been filed in good faith, and the burden is on the plan proponent (here the Debtor) to establish the good faith of the plan and the Debtor. *In re PPI Enterprises, Inc. 324 F.3d 197 (3d Cir. 2003).*

In this case, if necessary, Mr. Criscuolo will testify as to his employment and business history, the financial setbacks suffered by him and his wife, and the prospects for a successful reorganization.

Debtor has dealt with IRS and his tax issues head on, has acted very quickly to move this case to confirmation, and has proposed a plan that with deal with his mortgagee on a fair basis. Given the rather ragged treatment that Debtor and his wife have received from Wells over the last couple of years, Wells is receiving all that it is entitled to; that is, current payment and payment of its arrears.

With no 'good faith' objections raised, Debtor submits that this bar if fairly low, and that Debtor's Plan easily passes this test.

8

**1129(a)(4): Payments made are subject to Court approval**: Not applicable.

**1129(a)(5): Disclosure of identity of officers, etc.**: Not applicable.

**1129(a)(6): Regulatory approvals:**   Not applicable.

**1129(a)(7): Holders of each class of claims will receive the liquidation value of their claims:**

This is referred to as the "best-interest-of-creditors" test.  It applies in some cases whether creditors realize the plan is in their best interests or not.

Debtor owns real estate jointly with his wife and two cars, all of which are over-encumbered.  The vehicles are being paid directly to Ally Financial, and are current.  Ally's claims are unimpaired.  His other personal property has been exempted under the Code.

With respect to Debtor's residence, is it clearly over-encumbered.  Wells has done about five "drive-by" appraisals during the course of this case in the course of considering Debtor's various modifications requests.  The results were supplied to counsel in the course of these reviews: the values ranged from $420,00 to $460,000.  Debtor's pre-petition Comparative Market Analysis revealed a value of $431,000.  All of these figures are substantially lower than the claim of Wells, per Proof of Claim No. 6, at $584,000.

Debtor proposes, essentially, a "cure and maintain" plan,

and resumed regular monthly payments in November, 2016, shortly
after the conversion and the filing of the initial Plan and
Disclosure Statement.[1]  Debtor proposes to pay the past due
dollars, per the Proof of Claim of Wells, over a period of time,
without further interest, late charges or other fees or costs.
This provision is clearly allowed by Section 1123(a)(5)(G), which
allows, similarly to Chapter 13 cases, the "curing and waiving of
any default", that is, the "cure and maintain" provisions
referred to above.

Section 1123(a)(5)(G) provides, in pertinent part:

(a) A plan shall - ...

(5) provide adequate means for the plan's execution such as
- ...

(G) curing or waiving any default.

Cure and maintenance provisions are clearly authorized by
the Code.  *In re Taddeo, 685 F.2d 24 (2d Cir. 1982).*  The *Taddeo*
Court held that the concept of cure was basically the same thing
as is contemplated by chapter 13 cases.  Accordingly, the
authority to cure encompasses the "power" to de-accelerate.  *See
also Valente v. Savings Bank of Rockville, 34 B.R. 362 (Bkrtcy.
D. Conn. 1983).*

---

[1]As of November, 2016, Debtor and his wife resumed payment to Wells.
These payments were directed to JP Morgan Chase per instructions of their
counsel.  The payment amount was determined by reviewing notices provided by
Chase and taking a 'best guess' (by counsel) as to the current payment amount at
the time.  To date, these payments have been accepted.  Whether Wells/Chase has
applied them properly or consistently with the proposed plan treatment may be a
different matter.

In *In re Martin*, *66 B.R. 921 (Bkrtcy., D.Mont. 1986)*, the Court approved a restructuring of the secured creditor's note from seven to twenty years, as being both within the allowable provisions of 'fairness' and 'best interests'.

In *Valente,* the case similarly involved a default and acceleration of a residential mortgage, which had ripened into a state court judgment in foreclosure.  The debtors filed a 'maintain and cure' type plan, which was rejected by the bankruptcy court.  On appeal, the Court held that such plans are, indeed, specifically authorized by the Code and reversed the lower court, holding that the bankruptcy court denied the debtors the opportunity to present a "cure" plan, and instructed:

> On remand, the Bankruptcy Court should consider all the facts and circumstances surrounding the debtors' proposed plan.  Such an equitable deliberation would be in accord with the Bankruptcy Court's status as a court of equity. [citations omitted].  *Valente, 34 B.R. at 367.*

Debtor's plan in this case, as proposed, maintains current payments, and provides for the cure of the past due amounts.  Debtor has, or will, present evidence of his ability to perform the terms proposed by the plan, and his good faith in proposing the plan.

Therefore, Wells will receive "not less than" it would receive if the case were liquidate under Chapter 7.  Further, Wells will receive the full value of its claim from current and deferred cash payments.  If the Court finds that the plan is

feasible, this treatment of the secured creditor is both fair and equitable.  *See In re Martin, 66 B.R. at 927-28.*

**Section 1129(a)(8): Consensual confirmation.**

There are Five classes of claims, two of which cannot vote because their claims are not impaired (Classes Two and Three of Ally Financial re: Debtor's vehicles), and one (IRS) which does not vote as a matter of policy.  This leaves the Class One secured claim of Wells/Chase and the Class Five general unsecured claim of LVNV Funding.

Wells/Chase has neither voted nor filed any objections to confirmation.  Class Five LVNV has voted in favor of the Plan. See Report of Plan Balloting.

Therefore, the Debtor requests confirmation through the "cramdown" provisions of the Code contained in Section 1129(b)(1), which allows for confirmation of a plan notwithstanding non-acceptance by a dissenting class if the plan "does not discriminate unfairly, and is fair and equitable, with respect to" the class of dissenting claims.

In order to proceed with a cramdown, all requirements of Section 1129(a) except for acceptance under Section 1129(a)(8) must be met.

**The Cramdown:**

Other than consensual acceptance by ALL creditors, Debtor does have acceptance by one class of unsecured and impaired creditors, i.e. the Class Five Claim of LVNV, a general,

12

unsecured creditor.  See Section 1129(a)(10).  Therefore, it

appears that Debtor will have to obtain confirmation through the

cramdown provisions of the Code, that is, Section 1129(b):

> (b)(1) Notwithstanding section 510(a) of
> this title, if all the applicable
> requirements of subsection (a) of this
> section other than paragraph (8) are met with
> respect to a plan, the court, on request of
> the proponent of the plan, shall confirm the
> plan notwithstanding the requirements of such
> paragraph if the plan does not discriminate
> unfairly, and is fair and equitable, with
> respect to each class of claims or interests
> that is impaired under, and has not accepted,
> the plan.
>
> (b)(2) For the purpose of this
> subsection, the condition that a plan be fair
> and equitable with respect to a class
> includes the following requirements:
>
> (A)(i)(I) that the holders of such
> claims retain the liens securing such claims,
> whether the property subject to such liens is
> retained by the debtor or transferred to
> another entity, to the extent of the allowed
> amount of such claims; and
>
> (II) that each holder of a claim of such
> class receive on account of such claim
> deferred cash payments totaling at least the
> allowed amount of such claim, of a value, as
> of the effective date of the plan, of at
> least the value of such holder's interest in
> the estate's interest in such property;
>
> (ii) (sale provisions, not applicable);
> or
> (iii)for the realization by such holders
> of the indubitable equivalent of such claims.

As to secured creditors, the plan may be confirmed under

Section 1129(b)(2)(A)(I) if the secured creditor retains a lien

securing the amount of its allowed secured claim and it receives

deferred cash payment having a present value, as of the effective
date of the plan, equal to the present value of the collateral.
***In re Ahlers, 794 F.2d 388 (8th Cir. 1986); In re Martin, id.***    In
this "test", the allowed secured claim must equal the value of
the collateral at the time the plan was confirmed.

The Debtor's plan provides for Wells to retain its lien,
receive current payments, and provides for the cure of its
arrearage claim, over time, as specifically authorized by Section
1123(a)(5)(G).   Therefore, there is no argument relating to
present value since what Debtor is proposing has nothing to do
with valuation; rather, it has to do with treatment of a secured
claim is specifically authorized by the Code with respect to
treatment of secured claims, and specifically with respect to
cure of residential mortgage claims.   Even if this argument was
presented, it would need to be rejected because, as disclosed
above, the value of Debtor's real estate is significantly less
that the amount of the Wells secured claim.

The other requirement under Section 1129 (b) cramdown
provisions is the somewhat amorphous "fair and equitable"
standard, although the potential vagueness of the language also
reveals the Code's equitable nature at its core.

Debtor believes that the proposed Plan is "fair and
equitable" as well.   1129(b)(1)-(ii).   This subsection is the
"absolute priority rule", indicating that a plan cannot give
priority to a junior class of creditors or equity interests over

14

the objection of a more senior class that is impaired.

In this case, Debtor proposes to retain his exempt property, to pay IRS what it is legally entitled to, that is, its priority claim, over time, and to cure and maintain with respect to Wells, his mortgagee.  In addition, Debtor will pay his disposable income to two unsecured creditor classes over a 60 month period of time, as required, it appears, by Section 1129(a)(15).

The UST has raised, somewhat generically (the debtor is "retaining property"), the potential violation of the absolute priority rule.

While perhaps true as a generic statement, there are some important clarifications: (1) a debtor cannot retain property "of the estate" and not pay all creditors in full; and (2) a debtor **can** retain property of the estate provided that the debtor or some third party provides "new value" commensurate with the value of the property being retained.  Such value must be "new" and "substantial", new basically meaning, in most cases, from some third party source; "substantial" meaning differing things to different courts.

First, to the discussion of property retention.  Under the Plan, Debtor is not retaining non-exempt property.  There simply is no non-exempt property.  Debtor has proposed to retain all of his exempt property, something that he is entitled to do.

Because Debtor was able to use the various exemption provisions of Section 522, and those exemptions have not been

15

objected to by any party in interest, the exemptions are valid, final, and the property is no longer "property of the estate". *See Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644 (1992).*

Again, assuming that the absolute priority rule applies, the questions becomes whether exempt property makes any difference in the analysis.

There are three components to the absolute priority rule: (1) that there be a "junior" class of claims or interests;, (2) identifying the property retained by the holders of such junior claims or interest and (3) a determination of whether the property is retained 'on account of' the junior claim or interest. *In re Wabash Valley Power Association, Inc. 72 F.3d 1305 (7th Cir. 1995), cert. denied, 519 U.S. 965 (1996).*

Once a debtor's exemptions have been approved, the exempt property is no longer estate property, and the property exempted does not implicate the third prong of the absolute priority examination. *In re Henderson, 321 B.R. 550 (Bankr. M.D.Fla. 2005), aff'd sub nom Van Buren Indus. Investors v. Henderson, 341 B.R. 783 (M.D.Fla. 2006). See also In re Bullar, 358 B.R. 541 (Bankr.D.Conn 2007); In re Steedley, 2010 WL 3528599 (Bankr.S.D.Ga. 2010); In re Gerard, 495 B.R. 850, (Bankr. E.D.Wis. 2013).*

As Judge Fox explained in *In re Egan, 142 B.R. 730 (Bankr.E.D.Pa. 1992)*: "If debtors intend to retain only exempt

16

property, then they are merely retaining that which is their absolute right to retain in any event, and they are not, properly speaking, receiving or retaining 'any interest that is junior to the interests' of any class of creditors." *142 B.R. at 733.*

In *Henderson,* the lower court opinion, written by Judge Paskay, considered Debtor's Florida exemptions, including homestead, an insurance policy and an IRA, which was valued at between $212,000.00-$410,000.00 (a rather large range to be sure), but Debtor's ex-wife agreed to contribute $525,000.00 toward plan consummation.  The court found this contribution sufficient to satisfy the 'new value' exception, but also made it clear that exempted assets would not be considered in the analysis.

The *Steedley* case involved an order continuing a confirmation hearing.  The court held that the absolute priority rule does apply, that debtor's (unspecified) exempt property could be retained without violating the absolute priority rule, but then continued the hearing to have the parties further consider the impact of its ruling.

And in *Gerard*, the court again confirmed that exempt property does not enter into the equation relative to the absolute priority rule:

> This Court agrees and adds that the debtor's exempt property that has been removed from the estate prior to confirmation is not property that is received or retained "under the plan" as required for applications of the absolute priority rule.  The Court therefore holds that, although the absolute priority rule continues to apply in

> individual debtor cases, a debtor's proposal
> to retain his exempt property does not
> violate the rule. ***Gerard, 495 B.R. at 855.***

Because the debtor in Gerard proposed to retain a non-exempt
cash account worth $87,000.00 (being able to only exempt
$10,000.00 of that dollar value) and "some" non-exempt equity in a
residence, while providing only $27,000.00 in 'new value' from a
third party, the Court ordered that an amended plan be filed
within 30 days in accordance with the opinion.

We have learned that Debtor's retention of exempt property
simply does not impact the absolute priority rule.

3.   What might constitute "new value" in the context of
this case.

Debtor suggests that there is no requirement to provide 'new
value' because Debtor is not proposing to retain any non-exempt
property.  Nevertheless, Debtor's plan does propose that his wife,
Katherine Criscuolo, will contribute dollars to the case, to be
used to satisfy counsel fees or other fees as necessary to assist
in the success of the case.

**1129(a)(9): Certain tax provisions**: Not applicable.

**1129(a)(10): An impaired class has accepted the Plan**: As
disclosed on the Report of Plan Voting and as stated above, at
least one class of impaired claims, i.e. the Class Five unsecured
creditor LVNV Funding, has accepted the Plan.

**1129(a)(11): Confirmation is not likely to be followed by
liquidation or further reorganization (i.e. feasibility):**

18

The plan proponent must present evidence to sufficiently demonstrate that the plan has a reasonable chance of succeeding. **In re Acequia, Inc., 787 F.2d 1352 (9ᵗʰ Cir. 1986).** There need be no guarantee of success, but only a "reasonable assurance of commercial viability". **See In re Prudential Energy Co., 58 B.R. 857, 862 (Bankr. S.D.N.Y 1986); also In re Greate Bay Hotel & Casino, Inc. 251 B.R. at 226.** It has also been said that the standards for determining feasibility are not "rigorous". **In re Orfa Corp. of Philadelphia, 129 B.R.404 (Bankr., E.D.Pa. 1991).**

In this case, Debtor's pre-petition financial woes are far behind him, and especially since this case has been pending since 2014, both Debtor and his wife have been able to get their financial house in order. Debtor will be able to make the proposed Plan payments.

**1129(a)(12): Plan provides for payment of UST fees**: The Plan provides for the payment of fees imposed by the Code.

**1129(a)(13): Retiree benefits**: Not applicable.

**1129(a)(14): Domestic support obligations**: Not applicable.

**1129(a)(15): Individual cases**: This is another version of the liquidation test, which requires creditors to be paid the liquidation value of their claims, OR the Debtor's disposable income over a 60 month period of time following confirmation. However, this subsection is specifically triggered ONLY by an objection lodged by an unsecured creditor: 'in a case in which the debtor is an individual and in which the holder of an allowed

19

unsecured claim objects to the confirmation of the plan'.

Such an objection has not been filed in this case. As a consequence, as a matter of law, Debtor need not comply with this requirement. However, as a matter of good faith, and because Debtor has proposed a payment plan with which IRS has agreed, Debtor has, indeed, proposed to commit his disposable income to his unsecured creditors (including IRS and LVNV Funding) over a 60 month period of time. As a matter of satisfying the 1129(a)(15) requirement, however, the Court may, however, ignore this requirement in its analysis.

**1129(a)(16): Transfers of property:** Not applicable.

**CONCLUSION:**

In this case, the Debtor proposes to pay IRS its priority claim, cure and maintain his mortgage and pay his unsecured creditors his approximate disposable income over a 60 month period of time. He has demonstrated his good faith, the feasability of the plan, and the satisfaction of legal requirement and standards for confirmation. The Debtor's Plan should be confirmed.

**POSTLUDE - A WORD ON CLASSIFICATION:**

Although no objections to the classification scheme advanced by Debtor have been filed, in conversation the AUST has raised the question. Therefore, Debtor anticipates a possible equal concern for the Court. Accordingly, Debtor will address the issue at this point.

Debtor has two 'unsecured' claims, that is, the portion of
the claim of IRS that is, in fact, unsecured AND non-priority
(approximately $40,000) and a filed claim of LVNV Funding,
collecting for a credit card debt.[2]  Debtor has chosen to
classify the unsecured claim of IRS and the claim of LVNV Funding
separately, as Class Four (IRS) and Class Five (LVNV) claims.

According to the case law, Debtor must (or should at least,
if any objection is raised) be able to provide a reason for
separate classification of potentially similar claims.

The Debtor's reasons for classifying the Class 4 and Class 5
claims separately are several: while the IRS has agreed with its
treatment under the First Amended Plan, and essentially dictated
the terms of the Addendum dealing directly with default remedies
for IRS, the IRS, as a matter of policy, does not vote on Chapter
11 plans.  Therefore, the result is that placing an IRS unsecured
claim in  ANY unsecured class (other than its own) makes no
sense...whether they would agree with the plan, or not, one would
never know for reasons unrelated to the viability or desirability
of the actual plan.  So, reason number one for separate
classification is that we know, that in EVERY case involving an
IRS unsecured claim, it is essentially an automatic "no" vote
whether or not it agrees with its treatment under the proposed
plan (because its abstinence will affect the balance of votes in

---

[2] Debtor had listed 'potential' credit card and other unsecured claimants
in his original schedules, which were related to his prior business, not knowing whether
these creditors had obtained his personal guarantee or not.  None of those creditors have
filed claims, and LVNV is the only such claimant.

21

the class).

The second reason is that IRS, unlike LVNV, has recourse against Debtor's wife.  The third reason is that the IRS claim is different in character, in that, even though the unsecured portion of the IRS claim is unsecured, it is non-dischargeable.

**Debtor's classification scheme is consistent with the law.**

The Code provides only that claims that are NOT 'substantially similar' may NOT be placed in the same class; it does not provide that such 'substantially similar' claims may not be placed in separate classes.  Not surprisingly, as many things bankruptcy, these few words have spawned many battles.  The fear is that a debtor will gerrymander the process to create a favorable voting class even though the main sentiment among most creditors is that reorganization would serve no purpose.  According to the Third Circuit, this could "lead to abuse of creditors and would foster reorganizations that do not serve any broader public interest".  *John Hancock Mutual Life Ins. Co. v. Route 37 Business Part, 987 F.2d 154, at 158 (3d Cir. 1993).*

While referring to its own prior decision in *Jersey City Medical Center*, apparently with some skepticism with regard to its clarity, the Court went on to state:

In a "cram down" case, this means that each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed.  Otherwise, the

classification scheme would simply constitute a method for circumventing the requirement set out in 11. U.S.C. §1129(a)(10)(1988)." *Id. at 158.* (Note: the Court's use of the phrase 'voting interest' is interesting in that, in the case at hand, IRS apparently does not represent a 'voting interest' since it does not, for policy reasons, vote on plans.)

After reviewing several other circuit court decisions, admittedly a 'muddled' mix, the Court found that classifying the unsecured portion of a mortgagee's claim in a class different from other unsecured claims was unacceptable and presented a situation where there was no possibility of confirmation.  That reasoning is clearly distinct from this case, and, frankly, has been called into question in several other cases.

More recent cases appear to have adopted a less harsh attitude toward disparate classification and treatment of claims, supporting such differences provided:

1.   The discrimination is supported by a reasonable basis;

2.   The discrimination is necessary for reorganization;

3.   The discrimination is proposed in good faith; and

4.   The degree of discrimination is directly related to the basis or rationale for the discrimination.  *In re Unbreakable Nation, 437 B.R. 189, at 203 (Bankr. E.D.Pa 2010)(FitzSimon, J.).*

As discussed in *Unbreakable Nation,* the factors allowing for differing classification and treatment are relevant here: (1) the

IRS does not vote, a reasonable reason to take them out of the
voting 'mix'; (2) without having IRS separate treated, Class 5
could not support a vote FOR the plan, even though IRS DOES
support the plan; (3) the Plan was proposed in good faith and
does propose a recovery consistent with the Code (i.e. it pays
Debtor's 'disposable income' over a five year period, as
potentially required; (4) the degree of discrimination is
directly related to the outcome, that is, without different
treatment, the case most likely fails, even though no other
parties have filed an objection or voted against it.

   To the same effect is *In re Long Ridge Road Operating
Company, II. LLC, 2014 WL 886433 (Bky., D.N.J. 2014)(Steckroth,
J.),* where the Court upheld disparate treatment of ongoing trade
creditors versus creditors who were involved in litigation with
the debtor and whose claims were possibly subject to reduction.
The Court in *Long Ridge* notes that the "hotly contested ALJ
Proceedings are a long way from being decided.  In fact,
testimony showed that if the allowed Class 6 claims are
determined to be less than $6 million, the claimants will receive
the same 75% distribution as Class 5."

   The Court continued: "[i]n this case, there is a reasonable
basis for he Debtors' different treatment and classification.
The Debtors estimate the ongoing vendor trade terms will generate
a "one-time pickup" of $1-2 million in savings.  This is
substantial new value and fresh consideration from this class of

24

unsecured creditors helping to ensure the Debtors'
reorganization.  In contrast, payment of the general unsecured
Class 6 claims provides no economic value or fresh consideration
on a going-forward basis." *Id. at 20.  See also In re Johnston,
21 F.3d 323 (9th Cir. 1994)* (reasonable because separate class in
litigation and partially secured by non-debtor assets)*; Kliegl
Bros. Universal Elec. Stage Lighting Co., Inc. 149 B.R. 306
(Bankr.E.D.N.Y. 1992)* (reasonable basis exists for separate
classification and treatment because payment of one class of
claims is necessary to debtor's ability to continue to operate
business); and *In re Loop 76, LLC, 465 B.R. 525 (9th Cir. 2012)* (a
third party source for recovery, e.g. a guarantor, is enough to
distinguish claims).

So long as these claims classifications and treatments are
reasonably tailored to foster those relationships that are
critical to the success of the reorganized Debtor, they are
generally held acceptable by the courts.

Moreover, the demonstration of good faith required in
proposing a plan is whether it advances a result consistent with
the Bankruptcy Code's objectives, is proposed with honest
intentions and can be supported by the circumstances of the case.
*In re Greate Bay Hotel & Casino, 251 B.R. 213 (D.N.J. 2000).*

***CONCLUSION RE: CLASSIFICATION:***

Debtor suggest that his classification scheme is proper and necessary to advance his reorganization, as disclosed by the case law discussed herein.

**LAW OFFICES OF
KEVIN K. KERCHER, ESQ., P.C.**

BY:   /s/ Kevin K. Kercher
Kevin K. Kercher, Esquire
881 Third Street, Suite #C-2
Whitehall, PA 18052
(610) 264-4120 phone
(610) 264-2990 fax
**Attorney for Debtor**